J-S20041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.Q.M., III, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M. | No. 1920 WDA 2014 |

Appeal from the Order of October 28, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No.: TPR090-14

| | |
|---|---|
| IN RE: D.M.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M. | No. 1921 WDA 2014 |

Appeal from the Order of October 28, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No.: TPR091-14

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                          **FILED MARCH 31, 2015**

A.M. ("Father") appeals the October 28, 2014 order that terminated his parental rights to his son, A.Q.M., born in January 2010, and his daughter, D.M.M., born in March 2008 (collectively, "the Children").[1]  After review, we affirm.

---

[1]    On October 28, 2014, the trial court also terminated the parental rights of R.M.T. ("Mother").  Mother has not appealed.

The trial court summarized the procedural and factual history as follows:

[The Children] were adjudicated dependent on August 24, 2012 and placed in the care of [the Allegheny County Office of Children, Youth, and Families ("CYF")] on February 1, 2013. [The Children] have been out of both parents' care since February 1, 2013. CYF filed [petitions to terminate parental rights ("TPR")] on May 28, 2014, [and] sought termination . . . pursuant to . . . 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).

[Father] is single and has never been married. CYF records indicate that [Father] is listed on the birth certificates of both children as the father. [Father] signed an acknowledgement of paternity for both children.

The conditions which led to the removal and placement of [the Children] were a long history of concerns with the parents' substance abuse, concerns with domestic violence in the home, mental health concerns for both parents, the need for stable housing and allegations of [Father's] maltreatment and inappropriate physical discipline of [the Children] and their siblings.

Specifically, [Father] failed to comply with the [family service plan ("FSP")] goals established by CYF. Throughout the case, [Father] failed to complete Pyramid or any other [drug and alcohol] or dual diagnosis treatment programs. [Father] has repeatedly tested positive for substance [use] and failed to appear for urine screens when requested by CYF. [Father] has failed to obtain mental health treatment on a regular basis. [Father] has not completed a parenting program or domestic violence program and had been arrested twice in 2013 for domestic violence incidents. In addition, [Father] failed to attend court-ordered psychological interactional evaluations with [the Children].

Following the TPR hearing on October 15, 2014, and after review of exhibits, this court granted CYF's TPR petition on October 28, 2014.

Trial Court Opinion ("T.C.O."), 12/19/2014, at 1-2 (minor modifications to punctuation).

On November 26, 2014, Father filed his notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On December 19, 2014, the trial court filed its Rule 1925(a) opinion.

Father presents one issue on appeal:

1. Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [Father's] parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b)?

Father's Brief at 7.

We review the termination of parental rights in accordance with the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re: R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

\* \* \*

> [E]ven where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judge[] so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012) (citations modified; some citations omitted). It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds by clear and convincing evidence, a standard that requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted).

This Court has explained the proper analysis for a termination petition, as follows:

> [U]nder Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: [the] determination of the needs and welfare of the child under the standard of best interests of the child. Although a needs and welfare analysis is mandated by the statute, it is distinct from and not relevant to a determination of whether the parent's conduct justifies termination of parental rights under the statute. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child.

- 4 -

*In re Adoption of C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citations omitted).

Father concedes that CYF established the grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2). Father's Brief at 12. Father only challenges the trial court conclusions regarding the second part of the inquiry, which is controlled by the following provision:

> **§ 2511. Grounds for involuntary termination**
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical, and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In reviewing the trial court's decision regarding the needs and welfare of the child, we consider that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The trial court must consider the nature and status of the parent-child bond, particularly the effect upon the child of permanently severing that bond. *Id.* "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her

- 5 -

parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Father argues that CYF presented insufficient evidence to prove that termination of Father's parental rights served the Children's needs and welfare. Father claims that the trial court erred in relying upon the testimony of Neil Rosenblum, Ph.D., a licensed psychologist who performed evaluations in this case, because Dr. Rosenblum had not evaluated Father. Father also asserts that the trial court focused upon Father's lack of progress on his FSP goals instead of focusing upon the Children's needs and welfare. Father's Brief at 15-16.

The Commonwealth presented evidence that termination best served the Children's needs and welfare. Claire Chiaverini, the CYF caseworker, testified that Father participated in only two visits with the Children between October 2013 and October 2014, despite having the opportunity for weekly visits. Notes of Testimony ("N.T."), 10/15/2014, at 57. Father's last visit was March 9, 2014. *Id.* Ms. Chiaverini observed that the Children initially had been responsive to Father, but, over time, they became less attached to Father. *Id.* at 60. Ms. Chiaverini opined that the Children were bonded with their foster mother and looked to her for attention and affection. *Id.* at 63.

Dr. Rosenblum testified that he was unable to observe Father interact with the Children because Father did not attend his scheduled interview and never called to cancel or reschedule. *Id.* at 114. Dr. Rosenblum noted that

D.M.M. witnessed substance abuse by Father and was physically disciplined by Father. Conversely, D.M.M. felt safe in her foster placement. *Id.* at 118. Dr. Rosenblum opined that the foster mother provided an environment that met the Children's developmental and emotional needs. *Id.* at 119-20. Dr. Rosenblum recognized that D.M.M. has a residual attachment to Father, but observed that she looks to her foster mother to meet her needs. *Id.* at 120. Additionally, the remaining bond with Father is not positive. According to Dr. Rosenblum, D.M.M. characterized Father as "mean and somewhat abusive." *Id.* at 121. Dr. Rosenblum further opined that the Children have adjusted well to their foster placement and would not be adversely affected by the termination of their parents' rights. *Id.* at 122.

The testimony sufficed for the trial court to find that the Children's needs and welfare are best served by terminating Father's parental rights. The Children's foster mother is providing for their emotional, physical, and developmental needs. The Children look to their foster mother for love, comfort, and security. Father has had limited contact with the Children and chose not to participate in an interactional evaluation. There was no evidence that termination of his relationship with the Children would affect them negatively. Thus, the trial court did not abuse its discretion in terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/31/2015